**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Case No. 1:22-cv-9757 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ABIOMED, INC., MICHAEL R. MINOGUE, | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| DR. PAULA A. JOHNSON, DOROTHY E. | : **THE SECURITIES EXCHANGE ACT** |
| PUHY, JEANNINE RIVET, MYRON | : **OF 1934** |
| ROLLE, MD., ERIC ROSE, MD., MARTIN | : |
| P. SUTTER, PAUL G. THOMAS, and CHRIS | : **JURY TRIAL DEMANDED** |
| VAN GORDER, | : |
| | : |
| Defendants. | : |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Abiomed, Inc. ("Abiomed or the "Company") and the members Abiomed board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Abiomed by affiliates of Johnson & Johnson ("Johnson & Johnson").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on November 15, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Athos Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Johnson & Johnson, will merge with and into Abiomed, with Abiomed continuing as the surviving corporation and as a wholly owned subsidiary of Johnson & Johnson (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated October 31, 2022 (the "Merger Agreement"), each Abiomed common share issued and outstanding will be converted into the right to receive: (i) $380.00 per share owned; plus (ii) one non-tradable contingent value right ("CVR") representing the contractual right to receive contingent payments of up to $35.00 per CVR in accordance with the terms and subject to the CVR Agreement (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Abiomed's outstanding common stock and will expire on December 13, 2022 (the "Tender Offer").

3. Defendants have now asked Abiomed's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Abiomed's financial projections relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman Sachs. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Abiomed

stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Abiomed's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Abiomed common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Michael R. Minogue has served as a member of the Board since 2004 and is the Company's President and Chief Executive Officer and Chairman of the Board.

11. Individual Defendant Dr. Paula A. Johnson has served as a member of the Board since 2021.

12. Individual Defendant Dorothy E. Puhy has served as a member of the Board since 2003 and is the Lead Director.

13. Individual Defendant Jeannine Rivet has served as a member of the Board since 2016.

14. Individual Defendant Myron Rolle, MD has been a member of the Board since 2021.

15. Individual Defendant Eric Rose, MD served as a member of the Board since 2014.

16. Individual Defendant Martin P. Sutter served as a member of the Board since 2008.

17. Individual Defendant Paul G. Thomas served as a member of the Board since 2011.

18. Individual Defendant Chris Van Gorder served as a member of the Board since 2016.

19. Defendant Abiomed is incorporated in Delaware and maintains its principal offices at 22 Cherry Hill Dr., Danvers, MA 01923. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "ABMD."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>**The Proposed Transaction**</u>

22. Abiomed engages in the research, development, and sale of medical devices to assist or replace the pumping function of the failing heart. It also provides a continuum of care to heart failure patients. The Company offers Impella 2.5, a percutaneous micro heart pump with integrated motor and sensors; and Impella CP, a device for use by interventional cardiologists to support patients in the cath lab, as well as by cardiac surgeons in the heart surgery suite. It also provides Impella 5.0, Impella LD, and Impella 5.5, which are percutaneous micro heart pumps with integrated motors and sensors for use primarily in the heart surgery suite; Impella RP, a percutaneous catheter-based axial flow pump; Impella SmartAssist platform that includes optical sensor technology for improved pump positioning and the use of algorithms that enable improved native heart assessment during the weaning process; Impella Connect, a cloud-based technology that enables secure and remote viewing of the automated impella controller for physicians and hospital staffs; and OXY-1 System, a portable external respiratory assistance device. In addition, the Company is developing Impella ECP, a pump for blood flow of greater than three liters per minute; Impella XR Sheath, a sheath that expands and recoils allowing small bore access and closure with Impella heart pumps; Impella BTR, a percutaneous micro heart pump with integrated motors and sensors; and preCARDIA, a catheter-mounted superior vena cava therapy system designed to rapidly treat acutely decompensated heart failure. Abiomed sells its products through direct sales and clinical support personnel in the Germany, France, United States, Japan, Europe, Canada, Latin America, the Asia-Pacific, and the Middle East. The Company was founded in 1981 and is headquartered in Danvers, Massachusetts.

23. On November 1, 2022, Johnson & Johnson and the Company jointly announced the Proposed Transaction:

5

NEW BRUNSWICK, N.J. & DANVERS, Mass.--(BUSINESS WIRE)--Johnson & Johnson (NYSE: JNJ), the world's largest, most diversified healthcare products company, and Abiomed (NASDAQ: ABMD), a world leader in breakthrough heart, lung and kidney support technologies, today announced that they have entered into a definitive agreement under which Johnson & Johnson will acquire through a tender offer all outstanding shares of Abiomed, for an upfront payment of $380.00 per share in cash, corresponding to an enterprise value of approximately $16.6 billion which includes cash acquired. Abiomed shareholders will also receive a non-tradeable contingent value right (CVR) entitling the holder to receive up to $35.00 per share in cash if certain commercial and clinical milestones are achieved. The transaction was unanimously approved by both companies' boards of directors.

The transaction broadens Johnson & Johnson MedTech's (JJMT) position as a growing cardiovascular innovator, advancing the standard of care in one of healthcare's largest unmet need disease states: heart failure and recovery. Cardiovascular disease is the number one cause of death. All forms of cardiovascular disease lead to heart failure, which is a significant cost to health systems due to hospitalizations and extended length of stay.

Abiomed is a leading, first-to-market provider of cardiovascular medical technology with a first-in-kind portfolio for the treatment of coronary artery disease and heart failure, an extensive innovation pipeline of life-saving technologies, and an 18-year track record of profitable growth. Abiomed operates in one of the fastest growing medtech segments with significant expansion opportunities in indication, geography, and product.

"The addition of Abiomed is an important step in the execution of our strategic priorities and our vision for the new Johnson & Johnson focused on Pharmaceutical and MedTech," said Joaquin Duato, Chief Executive Officer of Johnson & Johnson. "We have committed to enhancing our position in MedTech by entering high-growth segments. The addition of Abiomed provides a strategic platform to advance breakthrough treatments in cardiovascular disease and helps more patients around the world while driving value for our shareholders."

"Abiomed's skilled workforce and strong relationships with clinicians, along with its innovative cardiovascular portfolio and robust pipeline, complement our MedTech portfolio, global footprint and robust clinical expertise. Together, we have the incredible opportunity to bring lifesaving innovations to more

patients around the world," said Ashley McEvoy, Executive Vice President and Worldwide Chairman of MedTech at Johnson & Johnson. "We are committed to investing for growth and look forward to welcoming the talented team and working together to foster our shared patient-first mindset and winning culture of innovation."

"We are pleased to have reached an agreement that reflects the remarkable value Abiomed created with our revolutionary Impella® heart pump platform and promising pipeline," said Michael R. Minogue, Abiomed's Chairman, President and Chief Executive Officer. "This transaction partners us with an organization that shares our patients-first mindset and creates immediate value for our patients, customers, employees and shareholders. It will enable us to leverage Johnson & Johnson's global scale, commercial strength and clinical expertise to accelerate our mission of making heart recovery the global standard of care."

**Benefits of the Transaction**

- **Diversifies and expands JJMT's portfolio with a leadership platform in heart failure and recovery:** Impella® heart pumps – a breakthrough technology with exclusive FDA approvals for patients with severe coronary artery disease requiring high-risk PCI (percutaneous coronary intervention), treatment of AMI (acute myocardial infarction) cardiogenic shock, or right heart failure – will complement JJMT's portfolio, which includes the leading Biosense Webster electrophysiology business, and further accelerate JJMT's shift into high-growth markets.
- **Benefits patients by advancing mission to make heart recovery the global standard of care:** Johnson & Johnson's footprint, leading capabilities in physician education, commercial excellence, and robust clinical expertise will complement Abiomed's capabilities, accelerating access and adoption of these lifesaving technologies to more patients around the world.
- **Expands market opportunity through a robust pipeline of technologies and clinical studies:** This combination broadens Johnson & Johnson's position as a cardiovascular innovator by adding a world-leading portfolio in heart recovery – with innovative R&D programs, exclusive FDA approvals, and multiple randomized controlled trials underway with the aim of achieving Class I clinical guidelines for Impella® – to expand access to patient populations.
- **Accelerates near- and long-term sales and earnings growth:** The proposed transaction will accelerate pro forma MedTech and Johnson & Johnson enterprise revenue growth. Johnson & Johnson expects the transaction to be slightly dilutive to

7

neutral to adjusted earnings per share in the first year, considering the impact of financing, and then accretive by approximately $0.05 in 2024, and increasingly accretive thereafter.

**Transaction Financing and Path to Completion**

Under the terms of the agreement, a wholly owned subsidiary of Johnson & Johnson (Merger Sub) will commence a tender offer for all outstanding shares of Abiomed, whereby Abiomed stockholders will be offered an upfront payment of $380.00 per share in cash, along with one non-tradeable CVR that entitles them to up to an additional $35.00 per share in cash if certain clinical and commercial milestones are achieved.

The milestones consist of:

- $17.50 per share, payable if net sales for Abiomed products exceeds $3.7 billion during Johnson & Johnson's fiscal second quarter of 2027 through fiscal first quarter of 2028, or if this threshold is not met during this period and is subsequently met during any rolling four quarter period up to the end of Johnson & Johnson's fiscal first quarter of 2029, $8.75 per share;
- $7.50 per share payable upon FDA premarket application approval of the use of Impella® products in STEMI patients without cardiogenic shock by January 1, 2028; and
- $10.00 per share payable upon the first publication of a Class I recommendation for the use of Impella® products in high risk PCI or STEMI with or without cardiogenic shock within four years from their respective clinical endpoint publication dates, but in all cases no later than December 31, 2029.

Johnson & Johnson expects to fund the transaction through a combination of cash on hand and short-term financing. Johnson & Johnson expects to maintain a strong balance sheet and to continue to support its stated capital allocation priorities of R&D investment, competitive dividends, value-creating acquisitions and strategic share repurchases.

Following the completion of the transaction, Abiomed will operate as a standalone business within Johnson & Johnson MedTech, becoming one of 12 JJMT priority platforms as defined by annual sales of at least $1 billion each. Michael R. Minogue, Abiomed's Chairman, President and Chief Executive Officer has an established succession plan to sustain a strong future and will assist in the transition. Andrew Greenfield, who has 17 years with Abiomed, most recently serving as Chief Commercial Officer has been

appointed President of Abiomed. Michael Bodner will lead the integration under Ashley McEvoy's leadership. Michael is a seasoned Interventional Cardiovascular executive with 15+ years in the industry with Johnson & Johnson and Abbott Vascular, most recently serving as Worldwide President of Johnson & Johnson's global leading Biosense Webster Electrophysiology business.

The transaction is expected to be completed prior to the end of the first quarter of 2023 and is conditioned on the tender of a majority of the outstanding shares of Abiomed's common stock, as well as the receipt of applicable regulatory approvals and other customary closing conditions. Assuming the closing of the tender offer, Johnson & Johnson will acquire any shares of Abiomed not tendered into the tender offer through a merger of Merger Sub with and into Abiomed for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Johnson & Johnson and Cravath, Swaine & Moore LLP is serving as legal advisor.

Goldman Sachs & Co. LLC is serving as financial advisor to Abiomed and Sullivan & Cromwell LLP is serving as legal advisor.

* * *

24. It is therefore imperative that Abiomed's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

25. On November 15, 2022, Abiomed filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's

9

stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Abiomed management and relied upon by Goldman Sachs in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts for fiscal years 2023 through 2032 (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Abiomed management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted Operating Income, and Unlevered Free Cash Flow but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs's Financial Analysis*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.5% to 13.0%; (ii) the range of illustrative terminal values of the Company as of March 31, 2032; (iii) the Company's weighted average cost of capital; (iv) the inputs and assumptions underlying the range of exit multiples of 16.0x to 20.0x; (v) the inputs and assumptions underlying the implied perpetuity growth rates ranging from 7.4% to 9.6%; (vi) the estimated total number of fully diluted outstanding shares of Abiomed as of October 28, 2022; and (vii) the net cash of the Company as of September 30, 2022.

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analyses*, the Solicitation Statement fails to disclose: (i) the implied future enterprise value of the Company as of March 31, 2023, 2024 and 2025; (ii) the estimated net cash of the Company as of March 31, of 2023, 2024 and 2025; (iii) the estimated total number of fully diluted outstanding shares of Abiomed as of March 31, 2023, 2024, and 2025; (iv) the inputs and assumptions underlying the illustrative discount rate of 11.8%.

33. With respect to Goldman Sachs' *Premia Paid Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected; and (ii) the premiums paid in those transactions.

34. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the financial metrics used to calculated the transaction value for each selected target company.

35. With respect to Goldman Sachs' *Selected Publicly Traded Companies Trading Multiples*, the Solicitation Statement fails to disclose the financial metrics and multiples used in the analysis for each selected company.

36. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about

the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of
the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Abiomed within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Abiomed, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Abiomed, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Abiomed, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 16, 2022     **MELWANI & CHAN LLP**

                /s *Gloria Kui Melwani*
                Gloria Kui Melwani (GM5661)
                1180 Avenue of the Americas, 8th Floor
                New York, New York 10036
                Tel: (212) 382-4620
                Email:  gloria@melwanichan.com

                *Attorneys for Plaintiff*